IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| WASHINGTON PROPERTIES, INC., *et al.* [1] | ) | CASE NO. 16-50883 |
| | ) | (Request for Joint |
| | ) | Administration Pending) |
| | ) | |
| | ) | JUDGE KOSCHIK |
| | ) | |
| DEBTORS | ) | |

**DEBTORS' MOTION FOR AN ORDER (A) AUTHORIZING DEBTORS TO
(I) UTILIZE CASH COLLATERAL ON AN INTERIM AND FINAL BASIS
PURSUANT TO 11 U.S.C. 363 AND (II) PROVIDE ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 361 AND 363 AND (B) SCHEDULING
A FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001**

The above-captioned debtors and debtors in possession (collectively the "Debtors") hereby move the Court (the "Motion") for the entry of an order, pursuant to sections 361 and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), and Rules 2002 and 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for an order (A) authorizing the Debtors to (I) utilize cash collateral on an interim and final basis pursuant to 11 U.S.C. §363 and (II) provide adequate protection pursuant to 11 U.S.C. §§ 361 and 363, and (B) scheduling a final hearing pursuant to Bankruptcy Rule 4001.

In support of this Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors and the last four digits of the Debtors' United States Tax Identification Number following in parentheses are: Washington Properties, Inc. (1231); Western Reserve of Medina, Ltd. (4201); and MRR Properties, LLC (3179).

## Rule 4001(b) Statement

(a) <u>Name of Each Entity That May Claim an Interest in Cash Collateral</u>
(referred to as the "Cash Collateral Creditor")

| Cash Collateral Creditor | Asserted Amount of Principal and Interest Due | Collateral[2] |
|---|---|---|
| FirstMerit Bank, N.A. | FM Western Reserve Note – A Portion - $4,687,974<br>B Portion - $2,751,009<br><br>FM MRR Note 1 - $92,446<br>FM MRR Note 2 - $765,976<br>FM MRR Note 3 - $81,879<br>FM MRR Note 4 - $237,716<br>FM MRR Note 5 - $211,303<br>FM MRR Note 6 - $2,641,295<br>FM MRR Note 7 – 792,389<br>FM MRR Note 8 - $245,356 | Real Property and Rents received for properties located at 3985, 3995, and 4015 Medina Road, 13 Public Square, 307-325 South Court Street, 801-807 E. Washington St., 23 South Court St., and 277-281 South Court Street in Medina, Ohio and 140 S. Main and 142 E. Liberty St. located in Wooster, Ohio |
| Westfield Bank, FSB | Westfield Note 1 - $421,191<br>Westfield Note 2 – $252,300<br>Westfield Note 3 - $686,606<br>Westfield Note 4 – $118,038<br>Westfield Note 5 - $1,062,346 | Real Property and Rents received for properties located at 43-47 Public Square, 241 S. Court St., 740-750 E. Washington St., in Medina, Ohio, and 149 E. Liberty Street, Wooster, Ohio |
| Fifth Third Bank | Fifth Third Note - $1,399,259 | Real Property and Rents received for properties located at 431-457 West Liberty St., Medina, Ohio |
| Dollar Bank, FSB | Dollar Note - $186,336 | Real Property and Rents received for property located at 18 Public Square, Medina, Ohio |

(b) <u>Purposes for Use of Cash Collateral</u>: As set forth in more detail in the Interim Budget, the Debtors propose to use the cash collateral to meet their postpetition obligations and to pay their expenses, general and administrative operating expenses, and other necessary costs and expenses, including maintenance and insurance and other expenses incurred during the pendency of the bankruptcy case, as well as to make adequate protection payments to the Cash Collateral Creditor(s) as set forth below.

(c) <u>Terms and Duration</u>: The Debtors seek authority to use Cash Collateral for the interim period effective *nunc pro tunc* from the Petition Date, April 18, 2016 through the date of the Final Hearing, pursuant to the Interim Budget or subsequent budgets to be filed with the

---

[2] The collateral indicated is for which the respective lender holds a first position mortgage.

Court. Any expenditure which would cause the Debtors to exceed any line item in the Interim Budget by more than fifteen percent (15%) shall require the approval of the Court or consent of its Cash Collateral Creditors.

(d) <u>Adequate Protection</u>: As part of the adequate protection for any diminution in the value of the Cash Collateral Creditor's interest in the pre-petition collateral, pursuant to §§ 361 and 363 of the Bankruptcy Code, the Debtors propose to grant to the Cash Collateral Creditor a replacement lien consisting of a lien upon all property of the Debtors of the same type and description as the pre-petition collateral to the extent the Cash Collateral Creditor holds a valid, properly perfected lien on such collateral as of the Petition Date (the "Replacement Liens"). With the exception of the FM Western Reserve Note, Debtors shall make monthly interest payments commencing May 15, 2016 at the applicable non-default rate (varying between 3.75-6.95%) per annum in the amounts set forth in the Interim Budget. With respect to the FM Western Reserve Note A Portion, Debtors shall make monthly interest payments commencing July 15, 2016 at the applicable non-default rate of 5.0% per annum in the amount set forth in the Interim Budget (the "Adequate Protection Payments"). As further adequate protection, the Debtors shall continue to account for all cash use, and the proposed cash use is being incurred to preserve property of the Estate.

## **Background**

1. On the date hereof (the "Petition Date"), the Debtors filed their voluntary petitions for relief. The Debtors continue the possession of their property and manage their business, as debtors in possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and reference from the District Court for the Northern District of Ohio pursuant to 28 U.S.C. § 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The venue of the Debtors' Chapter 11 cases and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and/or 1409.

3. Detailed facts about the Debtors, the reasons for the commencement of their Chapter 11 cases, and additional support for this Motion are set forth in the Affidavit and Statement of Michael R. Rose in Support of Chapter 11 Petitions and First Day Pleadings (the "Rose Affidavit"), filed contemporaneously herewith.[3]

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Rose Affidavit.

A.  **Summary of Relief Requested**

4. By this Motion, the Debtors are seeking authority to utilize cash collateral of its secured lenders, FirstMerit Bank, N.A. ("FirstMerit"), Westfield Bank FSB ("Westfield") Fifth Third Bank ("Fifth Third") and Dollar Bank FSB ("Dollar" and collectively, the "Cash Collateral Creditors"). The bulk of the cash collateral the Debtors propose to use is derived from the rents from various commercial properties owned by MRR and Western Reserve.

B.  **Pre-Petition Loan Agreements**

5. At the time of obtaining debt financing from the Cash Collateral Creditors, the Debtors executed an assignment of rents in connection with each of the commercial loans.

6. Debtors believe the fair market value of each parcel of real estate owned by Debtors exceeds the amount due under the first position loan of each Cash Collateral Creditor in all but two instances:

   a. On October 18, 2005, Western Reserve executed and delivered a promissory note in the principal amount of $9,280,000.00, loan number ending in x5110 in favor of FirstMerit. The promissory note was subsequently amended on March 15, 2014, and bifurcated the note into two portions: (a) an A Portion in the principal amount of $4,825,000, and (b) a B Portion in the principal amount of $2,751,008.94. The bifurcated notes were further amended on November 8, 2015 (the original note, collectively with the amendments, referred to herein as the "FM Western Reserve Note"). M. Rose, WPI and MRR have each guaranteed the indebtedness due FirstMerit under the FM Western Reserve Note. FirstMerit was granted a mortgage and an assignment of rents to secure the FM Western Reserve Note in the property commonly known as 3985, 3995, and 4015 Medina Road, Medina, Ohio, 44256. Debtors believe the fair market value of the property to be $6,380,000.00. According to the books and records of the

Debtors, approximately $7,438,983.00 is owed to FirstMerit as of the Petition Date under the FM Western Reserve Note, plus interest, fees and costs.

b. On March 8, 2010, M. Rose executed and delivered a promissory note in the principal amount of $1,904,278.91, in favor of Fifth Third (as amended or otherwise modified from time to time, the "Fifth Third Note"). MRR has guaranteed the indebtedness due Fifth Third under the Fifth Third Note. Fifth Third was granted a mortgage and an assignment of rents to secure the Fifth Third Note in the property commonly known as 431-457 West Liberty, Medina, Ohio, 44256. Fifth Third was also granted a second mortgage in the properties commonly known as 18 Public Square, Medina, Ohio 44256 and 801, 803, 805 and 807 East Washington Street, Medina, Ohio, 44256. Debtors believe sufficient equity exists in the additional collateral granted to Fifth Third such that the value of Fifth Third's collateral exceeds the amount due under the Fifth Third Note.

## Relief Requested

7. Pursuant to sections 363(a) and 552(b) of the Bankruptcy Code, certain cash and cash equivalents held by the Debtors as of the commencement of their chapter 11 cases and certain rents received by the debtors after the commencement of their cases may constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code. Pursuant to the terms of the assignments of rents, Cash Collateral Creditors may have an interest in such cash collateral (the "Cash Collateral").

8. By this Motion, the Debtors respectfully request the following relief:

(a) that the Court conduct a preliminary hearing to consider the Motion (the "Interim Hearing") pursuant to Bankruptcy Rule 4001;

(b) that, after the preliminary hearing, the Court enter an interim order, in a form

substantially the same as the order attached as **Exhibit A** to this Motion (the "Interim Cash Collateral Order") (i) authorizing the Debtors, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b), to use Cash Collateral to fund certain expenses set forth in the Budget (a copy of which is attached hereto as **Exhibit B**) upon the terms and conditions set forth in the attached Interim Cash Collateral Order and (ii) granting adequate protection, pursuant to sections 361 and 363(c)(2)(B) of the Bankruptcy Code, to Cash Collateral Creditors for the Debtors' use of Cash Collateral and other diminution in value of the prepetition collateral (if any) pending a final hearing on this Motion; and

(c) that the Court schedule a final hearing (the "Final Hearing") to consider any timely filed and served objections to this Motion and Interim Cash Collateral Order and, in the absence of a timely filed and served objection, deem the Interim Cash Collateral Order a final order without further action by the Court.

## Basis for Relief

9. The use of the Cash Collateral is essential to permit the Debtors to operate and to develop their plan of reorganization. In short, the Debtors are unable to operate without the use of Cash Collateral and the entry of an Interim Order is necessary to avoid immediate and irreparable harm to the Debtors' operations, its creditors and other parties in interest.

10. To preserve the value of the Debtors' assets, the Debtors require the interim use of Cash Collateral and without such use, the value of the Debtors' assets will immediately and substantially diminish and the Debtors would be forced to cease operations.

11. Access to the Cash Collateral will provide the Debtors' customers, vendors and employees with the requisite security that the Debtors will be able to continue to conduct business in the ordinary course and without interruption. Otherwise, the Debtors would be forced to shut down operations which would cause irreparable harm to the Debtors'

reorganization prospects.

**A.     The Cash Collateral Creditors are Adequately Protected and Use of the Cash Collateral is Proper**

12.     Section 363 of the Bankruptcy Code and Bankruptcy Rule 4001(b) authorize the Court to enter an order authorizing the Debtors to use Cash Collateral on an interim basis. As set forth herein, and as will be demonstrated at the hearing on the Motion, the interests of Cash Collateral Creditors will be adequately protected.

13.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor may "may not use, sell or lease cash collateral … unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section." See 11 U.S.C. §363(c).

14.     Additionally, section 363(e) provides that, on request of an entity that has an interest in cash collateral to be used, the court may condition such use as is necessary to provide adequate protection of such interest. Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which includes periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. §361. What constitutes adequate protection must be decided on a case-by-case basis. See Mbank Dallas N.A. v. O'Connor), 808 F. 2d 1393, 1396 (10th Cir. 1987); In re Martin, 761 F.2d 472 (8th Cir. 1985); see also, S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978). The focus of the requirement is to protect a secured creditor from diminution in the value of its collateral during the use period. See In re Gasel Transp. Lines, Inc., 326 B.R. 683, 692 (6th Cir. B.A.P. 2005); Matter of Kain, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); Delbridge v. Production Credit Association and Federal Land Bank (In re Delbridge), 104 B.R. 824 (E.D. Mich. 1989).

15.     The test for determining what constitutes adequate protection is "whether the

secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral." In re Carbone Companies, Inc., 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) citing Gasel Transp. Lines, 326 B.R. 683. In other words, if a debtor's proposed protections adequately preserve the creditor's interest in the collateral as it existed on the petition date, then that creditor is adequately protected.

16. Permitting the Debtors to utilize Cash Collateral will have the dual effect of protecting the value of the Cash Collateral Creditors' collateral, as well as providing the Debtors with the funds necessary to begin the administration of their chapter 11 cases. The law fully contemplates a flexible position in evaluating the Debtors' ability to provide adequate protection.

17. As part of the adequate protection for any diminution in the value of the Cash Collateral Creditor's interest in the pre-petition collateral, pursuant to §§ 361 and 363 of the Bankruptcy Code, the Debtors propose to grant to the Cash Collateral Creditors a replacement lien consisting of a lien upon all property of the Debtors of the same type and description as the pre-petition collateral to the extent the Cash Collateral Creditor holds a valid, properly perfected lien on such collateral as of the Petition Date (the "Replacement Liens"). With the exception of the FM Western Reserve Note, Debtors shall make monthly interest payments commencing May 15, 2016 at the applicable non-default rate (varying between 3.75-6.95%) per annum in the amounts set forth in the Interim Budget. With respect to the FM Western Reserve Note, Debtors shall make monthly interest payments commencing July 15, 2016 at the applicable non-default rate of 5.0% per annum in the amount set forth in the Interim Budget (together, the "Adequate Protection Payments"). As further adequate protection, the Debtors shall continue to account for all cash use, and the proposed cash use is being incurred to preserve property of the Estate.

### B. Courts Consistently Hold that "Adequate Protection" Can Take Various Forms

18. Adequate protection is typically established by demonstrating that cash is being used to maintain and enhance the value of the underlying income producing property in which the creditor also usually holds a security interest. Other factors are also considered, such as whether or not there is equity in the property, whether the property is declining in value, and whether or not postpetition payments due the creditor are current. See In re The Atrium Development Company, 159 B.R. 464, 471 (Bankr. E.D. Va. 1993).

19. Section 361 of the Bankruptcy Code provides that periodic cash payments, replacement liens, or relief constituting the "indubitable equivalent" of the creditor's interest may provide adequate protection. See In re Potvin Lumber Company, Inc., 24 B.R. 54 (Bank. D. Vt. 1982) (ordering that the Debtors could use cash collateral, and finding that the bank was adequately protected where the total value of the Debtors' personal property exceeded the bank's indebtedness); see also, In re Country Commons Associates, 149 B.R. 109 (Bankr. E.D. Mich. 1992) In re Resolution Trust Company v. Swedeland Development Group, Inc. (In re Swedeland Development Group, Inc.), 16 F.3d 552, 564 (3rd Cir. 1995).

20. In this instance, the Debtors propose to provide the Cash Collateral Creditors adequate protection by having the Court grant replacement liens in the Debtors' postpetition assets, and by making regular interest payments on each of the loans in which the Cash Collateral Creditor is fully secured by the underlying real estate. Additionally, Debtors propose to make monthly interest payments to FirstMerit on account of the FM Western Reserve Note, A Portion.

### C. Granting Replacement Liens and Making Periodic Payments Constitute Adequate Protection

21.     A primary method of providing adequate protection is through a replacement lien on what has been described as "soft collateral." See In re Dynaco Corporation, 162 B.R. 389, 394 (Bankr. D. N.H. 1993). Soft collateral was described by the Dynaco court as raw materials, work-in-process, inventory, and accounts receivable. Id. at fn. 3. Courts have consistently held that the granting of replacement liens in such collateral is sufficient adequate protection. See In re Quality Interiors, Inc., 127 B.R. 391 (Bankr. N.D. Ohio 1991) (the court held that the granting of a replacement lien provided adequate protection for the Debtors in possession's bank as contemplated by § 363(e)); In re 495 Central Park Avenue Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992) (projected property improvements constituted adequate protection when rental income from lease conditioned on improvements would increase value of real estate).

22.     In the instant case, the lien on the postpetition rents will result in a "replacement" of the prepetition collateral (the cash resulting from the collection and consumption of prepetition rents) with new, postpetition collateral. The Debtors will be utilizing the postpetition rents to maintain the Cash Collateral Creditors and make the required monthly interest payments. The net result will be that, save the FM Western Reserve Note, the Cash Collateral Creditors will receive the contract rate of interest due under the prepetition loan agreements and the properties will be maintained in at least there present condition, and as a result will experience little or no diminution in the value of their collateral pool. With respect to the FM Western Reserve Note Portion A, the Debtors have proposed to make adequate protection payments to FirstMerit based upon the applicable non-default interest rates of 5%. Additionally, Debtors continue to lease available space at the Western Reserve location which will not only maintain the value of the collateral, but will increase the value of FirstMerit's collateral. The interest payments, together with the leasing of additional space (and subsequent increase in rents), will result in FirstMerit's

collateral experiencing little to no diminution in value.

D.     **Interim Approval Should Be Granted**

23.     The Debtors anticipate using Cash Collateral, up to the amounts set forth in the Budget, which contains the maximum amount of such use. As protection for the interests of the Cash Collateral Creditors in the Cash Collateral, the Interim Cash Collateral Order grants to Cash Collateral Creditors Replacement Liens upon all property of the Debtors of the same type and description as the pre-petition collateral to the extent the Cash Collateral Creditor holds a valid, properly perfected lien on such collateral as of the Petition Date (the "Postpetition Collateral"). The Postpetition Collateral includes replacement security interests and liens in and against all proceeds, products, offspring, rents or profits of the Prepetition Collateral to the extent provided under section 552(b) of the Bankruptcy Code, but in any event only to the extent of the amount of Cash Collateral used by the Debtors and the amount of other diminution in the value of the Prepetition Collateral.

24.     Bankruptcy Rule 4001(b) provides that if, as here, a debtor seeks to use cash collateral during the 15-day period following the filing of a motion requesting authorization to use such collateral, the court may authorize the use of "only that amount of cash collateral as is necessary to avoid immediate and irreparable harm to the estate pending final hearing." Fed. R. Bankr. P. 4001(b)(2). After the 15-day period, the request for financing is not limited to those amounts necessary to prevent harm of the debtor's business.

**Notice**

25.     No trustee, examiner or official committee has been appointed in this chapter 11 case. Notice of this Motion has been served on the following entities or, in lieu thereof, to their counsel, if known: (i) the United States Trustee for the Northern District of Ohio; (ii) those

creditors listed on the Debtors' Consolidated List of Creditors Holding the 20 Largest Unsecured Claims; and (iii) the Debtors' secured lenders. In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

### No Prior Request

26. No previous application for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request that this Court: (i) enter an order, substantially in the form attached hereto as Exhibit A, authorizing the Debtors' immediate use of Cash Collateral in an amount sufficient to avoid immediate and irreparable harm to the Debtors, and scheduling a final hearing on this Motion; (ii) after a final hearing, a final order authorizing the use of Cash Collateral in the ordinary course of the Debtors' business; and (iii) grant such other and further relief as the Court may deem proper.

| | |
|---|---|
| April 18, 2016 | Respectfully submitted, |
| | Roderick Linton Belfance LLP |
| | */s/* Steven J. Heimberger<br>KATHRYN A. BELFANCE (#0018035)<br>TODD A. MAZZOLA (#0062160)<br>STEVEN J. HEIMBERGER (#0084618)<br>50 South Main Street, 10th Floor<br>Akron, Ohio 44308<br>Tele: (330) 434-3000<br>Fax: (330) 434-9220<br>kb@rlbllp.com<br>tmazzola@rlbllp.com<br>sheimberger@rlbllp.com<br>*Proposed Counsel for Debtors and Debtors In Possession* |